UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

    v.                                              Case No. 13-CR-166

CHANDELL M. THARP,

          Defendant.

## RECOMMENDATION THAT THE DEFENDANT'S MOTION TO SUPPRESS BE DENIED

**I. Procedural History**

The grand jury in this district returned an indictment on August 27, 2013 charging Chandell M. Tharp ("Tharp") with possessing a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). (Docket No. 1.) On September 19, 2013, Tharp filed a motion to suppress both the firearm that forms the basis for the present indictment, and the statements Tharp made following his arrest, on the basis that police did not possess reasonable suspicion to stop his vehicle or probable cause to believe that he was committing any offense. (Docket No. 9.)

The parties agree that during the noon hour of July 17, 2013, Tharp was driving a black Cadillac Deveille in the area of North Martin Luther King Drive and West Hadley Street in Milwaukee. (Docket No. 9 at 2.) At this time and in this area, Milwaukee Police Officer Theresa Janick ("Janick") was working in an undercover capacity posing as a prostitute. (Docket No. 9 at

2.) Janick, believing that Tharp had solicited her for prostitution, signaled other officers in the area to stop Tharp. (Docket No. 9 at 2.) Milwaukee Police officers stopped Tharp in the 400 block of West Center Street and arrested him. (Docket No. 9 at 3.) The defendant disputes whether he had actually solicited Janick and therefore an evidentiary hearing was held before this court on October 10, 2013 to determine whether there was reasonable suspicion to stop Tharp and probable cause to arrest him. The defendant does not separately contend that the search that led to the recovery of the firearm was otherwise improper. A summary of the evidence adduced at this hearing is set forth below. At the conclusion of the evidentiary hearing, the court heard the parties' oral arguments regarding the motion to suppress. The court also permitted the parties to submit post-hearing letters to the court, highlighting any case law they thought especially relevant. Each has done so. (Docket Nos. 16, 17.) Therefore, the pleadings on the motion to suppress are closed and the matter is ready for resolution.

A final pretrial conference is scheduled for November 4, 2013 and a jury trial is scheduled to commence before the Honorable Charles N. Clevert, Jr. on November 12, 2013.

**II. Summary of Evidentiary Hearing**

Milwaukee Police Officer Theresa Janick testified she was working undercover, attired in clothes consistent with a prostitute, when the defendant approached her and said, "I got what you need." Based upon Janick's year working with the Milwaukee Police Department's prostitution unit, during which time she posed undercover as a prostitute leading to a hundred arrests for prostitution, Janick understood this to be an offer of either drugs or money in exchange for sex. Janick responded, "What you got?" Tharp again said, "I got what you need."

Realizing that her cover officer, another undercover officer assigned with keeping Janick in constant view, could not see her, Janick crossed the street. Tharp made a U-turn and again

approached Janick. Tharp told Janick to "get in" the vehicle. Janick again asked Tharp what he wanted and Tharp again told her to get in. When Janick again asked Tharp what he wanted, he responded, "You da police?" Janick responded that she was not but had crossed the street because she saw a squad car. Tharp responded, "Fuck you!" Janick replied the same, prompting Tharp to say, "Watch who you are talking to."

Tharp got out of the car and, as Janick testified, approached the trunk saying in an aggressive tone that he was going to "beat my ass." Janick was afraid for her safety at this point but maintained her cover and again responded, "Fuck you!" Tharp then looked around before getting back into his car and drove off. Janick then gave the signal for the other officers to stop Tharp.

Officers followed Tharp for a short distance when he stopped at a gas station. Milwaukee Police Sergeant Stephen Herrmann ("Herrmann") approached Tharp's vehicle, identified himself as a police officer, but Tharp was initially uncooperative, holding his door shut when Herrmann attempted to open it. Herrmann testified that he told Tharp that he was being stopped for "what happened back there," prompting Tharp to say, "I wasn't trying to pick up that girl." This statement of Tharp was not included in any of the police reports written related to this incident, but Herrmann did not write a report. Tharp exited the car when other officers arrived and was taken into custody and patted down. The firearm that forms the basis for the indictment was found on his person.

III. Analysis

Police may stop and detain a vehicle suspected of association with criminal activity under largely the same well-established legal principles that limit a police officer's ability to stop and question a person walking down the street. See United States v. Johnson, 383 F.3d 538, 543 (7th

3

Cir. 2004); United States v. Morrison, 254 F.3d 679, 682 (7th Cir. 2001); United States v. Raibley, 243 F.3d 1069, 1073-74 (7th Cir. 2001). "Under Terry v. Ohio, 392 U.S. 1, 30 (1968), 'police officers may conduct a brief, investigatory stop of a suspect if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed.'" Johnson, 383 F.3d at 542 (quoting United States v. Wimbush, 337 F.3d 947, 949 (7th Cir. 2003)). Reasonable suspicion is a quantum of proof that is more than a mere hunch but less than probable cause and "falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002). Courts must assess whether reasonable suspicion exists by looking to the totality of the circumstances to determine whether the officer conducting the stop had a particularized and objective basis for the stop. Id. at 273 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). The totality of the circumstances includes "the experience of the law enforcement agent and the behavior and characteristics of the suspect." United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000) (quoting United States v. Odum, 72 F.3d 1279, 1284 (7th Cir. 1995)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

An arrest is constitutionally valid if, at the moment the arrest was made, the arresting officers had reasonably trustworthy information that would cause a reasonably prudent person to believe that the arrestee had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964) (citing Brinegar v. United States, 338 U.S. 160, 175-176 (1949); Henry v. United States, 361 U.S. 98, 102 (1959)). Probable cause is a flexible concept and is based upon common sense. Xing Qian v. Kautz, 168 F.3d 949, 953 (7th Cir. 1999) (citing Texas v. Brown, 460 U.S.

4

730, 742 (1983)). An arresting officer's belief need not be more likely true than false for there to be probable cause to arrest. Id.; United States v. Sawyer, 224 F.3d 675, 679 (7th Cir. 2000) (citing United States v. Burrell, 963 F.2d 976, 986 (7th Cir. 1992)). Rather, "[s]o long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." United States v. Sawyer, 224 F.3d 675, 679 (7th Cir. 2000) (citing United States v. Levy, 990 F.2d 971, 973 (7th Cir. 1993)). However, only the facts known to the arresting officer at the time of the arrest may be considered; facts discovered after an arrest are irrelevant to the question of whether there was probable cause to arrest a person. Id. at 953-54 (citing Hirsch v. Burke, 40 F.3d 900, 904 (7th Cir. 1994); Maltby v. Winston, 36 F.3d 548, 557 (7th Cir. 1994)).

> The police who actually make the arrest need not personally know all of the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause.

United States v. Harris, 585 F.3d 394, 400 (7th Cir. 2009) (quoting Tangwall v. Stuckey, 135 F.3d 510, 517 (7th Cir. 1998)).

Milwaukee Ordinance 106-35, "Loitering-Soliciting Prostitutes," states:

1. In this section:

    a. "Known area of prostitution" means a public place where within 3 years previous to the date of arrest for violation of this section, and within the knowledge of the arresting officer, a person had been arrested for a violation which led to a conviction in Milwaukee municipal court or Milwaukee County circuit court of an offense involving prostitution.

    b. "Known prostitute" means a person who, within 3 years previous to the date of arrest for violation of this section, had within the knowledge of the arresting officer been convicted in Milwaukee municipal court or Milwaukee County circuit court of an offense involving prostitution.

> c. "Public place" means an area generally visible to public view and includes, but is not limited to, streets, sidewalks, bridges, alleys, plazas, parks, driveways, parking lots and buildings open to the general public including those which serve food or drink or provide entertainment, and the doorways and entrances to buildings or dwellings and the grounds surrounding them.

> 2. Any person who loiters or drives in any public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution shall forfeit not less than $500 nor more than $5,000 or upon default of payment be imprisoned for not more than 80 days. Among the circumstances which may be considered in determining whether such purpose is manifested are the following: that the person frequents, either on foot or in a motor vehicle, a known area of prostitution; repeatedly beckons to stop or attempts to stop, or engages known prostitutes in conversation; or stops the motor vehicle the person is the operator of and picks up or attempts to pick up a known prostitute. The violator's conduct must be such as to demonstrate a specific intent to induce, entice, solicit or procure another to commit an act of prostitution. No arrest may be made for a violation of this section unless the arresting officer first affords the person an opportunity to explain the person's conduct, and no one shall be convicted of violating this section if it appears at trial that the explanation given was true and disclosed a lawful purpose.

(Ex. B.)

As a preliminary matter, it is important to note that this ordinance does not proscribe prostitution or solicitation of a prostitute, per se. Prostitution is a misdemeanor proscribed under state law. Wis. Stat. § 944.30. Milwaukee Ordinance 106-35 is a municipal ordinance that imposes non-criminal civil penalties for the related but distinct conduct of loitering for the purposes of prostitution. Thus, whether Tharp actually requested the undercover officer to engage in a sex act in exchange for anything of value, see Wis. Stat. § 944.30, is not determinative of whether there was probable cause to believe he violated this ordinance. It is quite possible to loiter for the purposes of prostitution without actually soliciting prostitution, and conversely, quite possible to violate Wis. Stat. § 944.30 without violating this ordinance. Tharp's statements are relevant to the probable cause analysis to the extent that they might tend to suggest that his driving in the area and stopping and talking to the undercover officer were for

the purpose of "inducing, enticing, soliciting or procuring another to commit an act of prostitution."

As for the portions of the ordinance instructing consideration of whether the suspect "repeatedly beckons to stop or attempts to stop, or engages known prostitutes in conversation; or stops the motor vehicle the person is the operator of and picks up or attempts to pick up a known prostitute," these provisions are simply factors that may be considered in assessing whether certain conduct violated the ordinance. They are not elements that must be satisfied; nor is this list of factors finite. Thus, the narrow question before the court is, whether under the totality of the circumstances, Tharp was driving in the area of North Martin Luther King Drive and West Hadley Street probably for "the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution."

Tharp, in an area known for prostitution, twice approached a woman attired in clothing consistent with those of a prostitute, repeatedly made statements to her that the undercover officer, based upon her year of work on the prostitution detail and roughly 100 prostitution arrests, understood as being a solicitation for sex in exchange for something of value, told the undercover officer to get in the car, which the experienced officer again regarded as consistent with solicitation of a prostitute, and became concerned that the undercover officer might be a police officer, a fact that would not appear especially relevant if Tharp's intended conduct was not unlawful. Based upon all of these circumstances, the court concludes there is probable cause to believe that Tharp was driving in the area of North Martin Luther King Drive and West Hadley Street for "the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution."

As for the ordinance's requirement that the suspect be afforded an opportunity to explain himself before arrest, the court does believe the absence of such opportunity would necessarily make the arrest unlawful for the purposes of the Fourth Amendment. But in any event, the court finds that Tharp was afforded such an opportunity when Herrmann told Tharp that he was being stopped for "what happened back there." Rather than providing an innocent explanation for his conduct, Tharp simply denied criminal intent, stating, "I wasn't trying to pick up that girl."

Additionally or alternatively, the court notes that when assessing the question of whether probable cause existed to arrest the defendant, the court is not limited to considering only the offense the arresting officer subjectively believed the defendant had committed. Devenpeck v. Alford, 543 U.S. 146, 153 (2004). Rather, the court may consider whether the defendant's conduct established probable cause to believe that the defendant committed any other arrestable offense. Here, the court concludes that Tharp's threats to batter the undercover police officer fell within the ambit of Wisconsin's disorderly conduct statute, Wis. Stat. § 947.01, and therefore officers possessed probable cause to arrest Tharp for that offense.

Therefore, having concluded that there was probable cause to arrest the defendant, the court shall recommend that the defendant's motion to suppress be denied.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to suppress, (Docket No. 9), be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of

Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 16th day of October, 2013.

_____
AARON E. GOODSTEIN
U.S. Magistrate Judge